**Henry Lernell SMITH, petitioner, Respondent,**

v.

**STATE of Minnesota, Appellant.**

**No. C8–98–1951.**

Court of Appeals of Minnesota.

June 22, 1999.

Review Denied Aug. 27, 1999.

Phillip S. Resnick, Scott J. Seiler, Resnick & Seiler, P.L.L.P., Minneapolis, for respondent.

Mike Hatch, Attorney General, St. Paul, and Amy Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge, SHORT, Judge, and HOLTAN,* Judge.

## OPINION

SHORT, Judge

In 1992, Henry Lernell Smith pleaded guilty to second-degree felony murder in violation of Minn.Stat. § 609.19(2) (1992), and first-degree assault in violation of Minn.Stat. § 609.221 (1992). Five and a half years later, Smith filed a petition for postconviction relief. The postconviction court vacated Smith's sentence for second-degree felony murder and ordered a trial. On appeal, the state argues: (1) an illegal drug sale that results in a shooting death may serve as a predicate felony for second-degree felony murder; and (2) the withdrawal of Smith's guilty plea was not necessary to correct a manifest injustice.

## FACTS

On March 9, 1992, Henry Lernell Smith went to 2607 Golden Valley Road in Minneapolis to sell cocaine. At the residence, Smith learned Sean Woods and Roderick Sanders wanted to buy drugs. After a conversation with Woods and Sanders, Smith left because he felt "something was funny," but returned later with a loaded .22 caliber, sawed-off rifle to complete the sale. Smith asked Sanders and Woods if they were ready to buy cocaine; Sanders and Woods answered affirmatively. After Smith placed the drugs in front of the two men, he saw Sanders pull a .22 caliber gun from his pocket. Smith shot Sanders in the abdomen and Sanders ran from the room. Woods lunged at Smith, and, during a struggle, Smith shot Woods in the abdomen area. Sanders was treated for his gunshot wound and recovered, but Woods died from his injuries.

A grand jury indicted Smith on one count of first-degree felony murder while committing or attempting to commit aggravated robbery in violation of Minn.Stat. § 609.185(3) (1992), one count of first-degree assault in violation of Minn.Stat. § 609.221, and one count of aggravated robbery in violation of Minn.Stat. § 609.245 (1992). On October 13, 1992, as a result of plea negotiations, Smith pleaded guilty to second-degree felony murder in violation of Minn.Stat. § 609.19(2) and first-degree assault in violation of Minn. Stat. § 609.221. Based on his plea agreement, Smith was sentenced to 144 months in prison for second-degree felony murder and 81 months for first-degree assault.

## ISSUES

I. Does Minn.Stat. § 609.19(2) preclude the use of a drug crime that results in a shooting death as a predicate felony for second-degree felony murder?

II. Is withdrawal of Smith's 1992 guilty plea necessary to correct a manifest injustice?

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## ANALYSIS

■ Postconviction actions present an opportunity for collateral review after expiration of the time for direct appeal. 8 Henry W. McCarr, *Minnesota Practice* § 43.1, at 675 (2d ed.1990); *see* Minn.Stat. § 590.01, subd. 1 (1998) (providing postconviction remedy for criminal convictions or sentences that violate federal or state constitution or laws). In reviewing a postconviction order, our function is to determine whether the record sustains the postconviction court's findings, and whether the decision constitutes an abuse of discretion. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997); *Miller v. State*, 531 N.W.2d 491, 492 (Minn.1995). But we are not bound by a trial court's statutory construction. *See State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996) (stating statutory construction reviewed de novo). And a defendant may withdraw a guilty plea after sentencing only on a timely motion and with proof that withdrawal is necessary to correct a manifest injustice. Minn. R.Crim. P. 15.05, subd. 1; *see State v. Trott*, 338 N.W.2d 248, 251 (Minn.1983) (noting valid guilty plea must be accurate, voluntary, and intelligent).

Despite the passage of five and a half years between conviction and the filing of a postconviction petition, the postconviction court allowed Smith to withdraw his plea to second-degree felony murder. The postconviction court concluded that Smith's drug crime was an improper predicate felony for murder in the second degree, and ordered a trial. We are asked whether Minn.Stat. § 609.19(2) precludes a drug crime that results in a shooting death as a predicate felony, and if so, whether Smith's 1992 plea constituted a "manifest injustice" under Minn. R.Crim. P. 15.05, subd. 1.

## I.

■ A person is guilty of felony murder in the second degree if that person:

causes the death of a human being, without intent to effect the death of any person, while committing or attempting to *commit a felony offense other than* criminal sexual conduct in the first or second degree with force or violence.

Minn.Stat. § 609.19(2) (emphasis added); *cf.* Minn.Stat. § 609.19, subd. 2(1) (1998) (providing identical definition for second-degree felony murder, but adding drive-by shooting to exceptions to permissible predicate felonies). This statute permits all felony offenses, except specifically referenced felonies, to be used as predicate felonies to second-degree murder. Minn. Stat. § 609.19(2); *see In re Welfare of M.D.S.*, 345 N.W.2d 723, 729 (Minn.1984) (noting second-degree felony murder revised to apply to all but specific felony exceptions); 9 Henry W. McCarr, *Minnesota Practice* § 54.2, at 225–26 (2d ed.1990) (quoting *State v. Back*, 341 N.W.2d 273, 277 (Minn.1983) and noting felony murder rule can be used with any underlying felony, including property offenses); *see also* Minn.Stat. §§ 645.17(2) (1998) (stating legislature intends entire statute to be effective), 645.19 (1998) (stating exceptions in statute shall be construed to exclude all others). Moreover, the statute is sufficiently precise, and persons of common intelligence need not guess at its meaning nor differ in its application. *See Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (noting penal laws must be sufficiently definite to avoid arbitrary and discriminatory enforcement); *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn.1985) (recognizing laws must be sufficiently definite so ordinary people can understand what conduct is prohibited). Given the unambiguous statutory language, we conclude a sale of cocaine that results in a shooting death is a valid predicate felony for second-degree felony murder.

Smith argues the legislature's failure to expressly include drug offenses in Minn. Stat. § 609.19(2) demonstrates an intentional omission. *Cf.* Minn.Stat. §§ 609.185(3) (defining first-degree murder to include intentional killings while

committing or attempting to commit unlawful sales of controlled substances), 609.195(b) (1992) (defining third-degree murder to include unintentional killings proximately caused by selling, giving away, bartering, delivering, exchanging, distributing, or administering controlled substances). While we agree that penal statutes must be strictly construed in favor of a defendant, that principle of construction does not justify supplying restrictive language that is absent from the statute. *See State v. Zacher*, 504 N.W.2d 468, 473 (Minn.1993) (holding rule of strict construction does not require court to assign narrowest possible interpretation to statute); *see also United States v. Gideon*, 1 Minn. 292, 296, 1 Gil. 226, 230 (1856) (establishing tradition of strictly construing penal statutes).

Felony murder statutes have historically isolated for special treatment those felonies that involve a special danger to human life. *M.D.S.*, 345 N.W.2d at 729 (quoting *State v. Nunn*, 297 N.W.2d 752, 753 (Minn. 1980)); *see State v. Cole*, 542 N.W.2d 43, 53 (Minn.1996) (acknowledging traditional limitation that predicate felony must involve special danger to human life based on case's facts and circumstances). Although the elements of an illegal drug sale may not independently demonstrate a special danger to human life, the manner in which Smith committed his 1992 drug sale constituted such a danger. *See Cole*, 542 N.W.2d at 53 (holding court may look at facts and circumstances of particular case in determining whether underlying felony involves special danger to life). Smith chose to arm himself and return to the scene of a drug deal of which he was highly suspicious. Under these circumstances, we conclude the postconviction court misinterpreted the statute and abused its discretion by concluding a sale of cocaine that results in a shooting death was an invalid predicate felony for second-degree felony murder.

Our interpretation of Minn.Stat. § 609.19(2) is supported by the decisions of foreign jurisdictions. *See, e.g., Grant v. Rivers*, 920 F.Supp. 769, 787 (E.D.Mich. 1996) (denying habeas petition and concluding defendant was properly convicted of felony murder after stabbing his victim during drug transaction); *Christie v. State*, 652 So.2d 932, 934–35 (Fla.Dist.Ct.App. 1995) (affirming first-degree felony murder conviction with predicate felony of aiding and abetting trafficking in cocaine); *Harris v. State*, 267 Ga. 435, 479 S.E.2d 717, 718 n. 2 (1997) (affirming felony murder conviction and noting distribution of cocaine could serve as predicate felony); *State v. Moore*, 930 S.W.2d 464, 469 (Mo. Ct.App.1996) (affirming second-degree felony murder conviction based on predicate felony of possession of controlled substance with intent to deliver); *State v. Bankert*, 117 N.M. 614, 875 P.2d 370, 377 (1994) (holding felony trafficking of cocaine properly served as predicate felony to felony murder conviction even though crime not inherently dangerous); *Hickman v. Commonwealth*, 11 Va.App. 369, 398 S.E.2d 698, 700 (1990) (concluding one who assists another in illegal possession of drugs may be convicted under felony murder doctrine), *aff'd*, 242 Va. 263, 410 S.E.2d 88 (1991).

II.

Even if the cocaine sale was an invalid predicate felony, not all errors result in a "manifest injustice" warranting the withdrawal of a guilty plea. *See Kim v. State*, 434 N.W.2d 263, 266 (Minn.1989) (noting defendant does not have absolute right to withdraw plea, but rather must show manifest injustice). Smith's five-and-a-half-year delay in seeking to withdraw his guilty plea weighs against his petition for postconviction relief. *See Jones v. State*, 288 Minn. 527, 529, 179 N.W.2d 315, 317 (1970) (noting delay in seeking relief is relevant consideration and affirming denial of petition to withdraw 16–year–old guilty plea); *State v. Searles*, 274 Minn. 199, 200, 142 N.W.2d 748, 749–50 (1966) (affirming denial of postconviction relief and noting

three years had lapsed since conviction). As a practical matter, the withdrawal of Smith's plea after this five-and-a-half-year delay may bar reprosecution due to passage of time. *See Chapman v. State*, 282 Minn. 13, 16–17, 162 N.W.2d 698, 700–01 (1968) (requiring the "strongest of reasons" to withdraw plea after conviction where effect would be to seriously prejudice state and warning against use of guilty plea as tactical device to frustrate prosecution); *cf. Wensman v. State*, 342 N.W.2d 150, 151 (Minn.1984) (noting withdrawal of plea possible where two-year delay did not cause prejudice to prosecution).

■ Smith argues a manifest injustice occurred because his plea was without an adequate factual basis. *See State v. Ecker*, 524 N.W.2d 712, 716 (Minn.1994) (holding sufficient factual basis for guilty plea must be established to ensure its accuracy). But Smith established the factual basis for his guilty plea by: (1) testifying that on March 9, 1992, while armed with a loaded rifle, he went to a private residence to sell cocaine to Sanders and Woods, and shot both men in the abdomen; (2) acknowledging defense counsel told him about the charges against him; (3) admitting he injured Sanders and killed Woods; (4) waiving any possible defenses and pleading guilty under a plea agreement; and (5) writing a letter to his cousin, which described going to the residence to rob the two men of their drug money and boasting about the murder. Although Smith's testimony was elicited through examination by defense counsel, the facts are sufficient to infer Smith's guilt of second-degree felony murder and first-degree assault. *See id.* at 716 (holding trial court need not personally interrogate defendant prior to accepting guilty plea if adequate factual basis is established); *State v. Neumann*, 262 N.W.2d 426, 430 (Minn.1978) (noting court must establish that facts exist from which defendant's guilt may be reasonably inferred). Under these circumstances, the trial court abused its discretion by permitting the withdrawal of Smith's guilty plea to second-degree felony murder. *See Chapman*, 282 Minn. at 19 n. 8, 162 N.W.2d at 702 n. 8 (noting plea may not be withdrawn when defendant understood nature and seriousness of offense charged at time plea was entered); *see also Watts v. United States*, 278 F.2d 247, 251 (D.C.Cir. 1960) (stating claim of manifest injustice is "utterly incompatible" with defendant's repeated admissions of crime charged).

Smith also argues his conduct more closely fits the crime of third-degree murder. *See* Minn.Stat. § 609.195(b) (defining third-degree murder to include those who proximately cause death by selling illegal drugs). However, because we conclude that Smith's illegal drug sale constitutes a proper predicate felony to second-degree murder and that a sufficient factual basis was established to support his plea, it is unnecessary to address whether Smith could have been convicted of third-degree murder.

## DECISION

An illegal sale of drugs may serve as a predicate felony for second-degree felony murder under Minn.Stat. § 609.19(2) when the sale is committed in a manner that poses special danger to life. Because Smith's plea does not constitute a manifest injustice under Minn. R. Civ. P. 15.05, subd. 1, we reinstate the plea.

**Reversed.**